UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

A.M.P.,

                          Plaintiff,

v.                                                                                                  1:17-CV-0132
                                                                                                                    (WBC)

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

APPEARANCES:                                                    OF COUNSEL:

A.M.P.                                                                            PRO SE
  Pro Se
179 South Rd.
Round Top, NY 12473

U.S. SOCIAL SECURITY ADMIN.                  EMILY FISHMAN, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 32.).

      Currently before the Court, in this Social Security action filed by A.M.P. ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 21, 24, 29.) For the reasons set forth below the matter is remanded under Sentence Four of 42 U.S.C. § 405(g) for further proceedings.

I.   RELEVANT BACKGROUND

   A.   Factual Background

Plaintiff was born in 1977. (T. 115.) She completed a four year college. (T. 85-86.) Generally, Plaintiff's alleged disability consists of Crohn's disease. (T. 257.) Her alleged disability onset date is April 20, 2012. (T. 115.) Her date last insured is December 31, 2012. (*Id*.) She previously worked as a data entry clerk, deli worker, insurance claims examiner, receptionist, and waitress. (T. 258.)

   B.   Procedural History

On October 22, 2012, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 115.) Plaintiff's applications were initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On September 4, 2014, and March 31, 2015, Plaintiff appeared before the ALJ, Carl E. Stephen. (T. 68-78, 79-114.) On April 23, 2015, ALJ Stephen issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 11-32.) On December 7, 2016 the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

   C.   The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 16-26.) First, the ALJ found Plaintiff met the insured status requirements through December 31, 2012 and Plaintiff had not engaged in substantial gainful activity since April 20, 2012. (T. 16.) Second, the ALJ found Plaintiff had the severe impairments of asthma, Crohn's disease, degenerative changes in the lumbar spine, inflammatory bowel disease, osteoarthritis, and plantar fasciitis. (*Id.*) Third, the ALJ found Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 19.) Fourth, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform:

> [l]ight work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except: [Plaintiff] can occasionally climb stairs and ramps, but can never climb ladders, ropes, or scaffolds; [Plaintiff] requires access to a restroom; and [Plaintiff] should not be exposed to concentrated respiratory irritants.

(T. 20.)[1] Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 25-26.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes essentially five separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the ALJ erred in his step two determination. (Dkt. No. 21 at 43 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

erred in his step three determination. (*Id.* at 14-21.) Third, Plaintiff argues the ALJ erred in his step four determination because the ALJ failed to properly weigh the medical opinion evidence in the record, the ALJ mischaracterized the evidence in the record, and the ALJ failed to properly assess Plaintiff's credibility. (*Id.* at 21-43.) Fourth, Plaintiff argues the ALJ erred in his step five determination. (*Id.* at 43-45.) Fifth, and lastly, Plaintiff argues the Appeals Council erred by not considering new and material evidence. (*Id.* at 45-48.)

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues remand is warranted because there are gaps in the record and the ALJ misapplied certain legal standards. (Dkt. No. 24 at 7-10 [Def.'s Mem. of Law].) Second, Defendant argues the Court should not award benefits because the record does not compel a finding of disability. (*Id.* at 10-19.)

### C. Plaintiff's Reply

Although in her original brief Plaintiff requests remand for further proceeding, or calculation of benefits, Plaintiff filed a reply requesting remand solely for calculations of benefits. Plaintiff essentially argues remand for calculations of benefits is warranted because she meets a Listing. (Dkt. No. 29 [Pl.'s Reply].)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the

Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable

deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### D.     Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.     ANALYSIS

### A. Alleged Onset Date

Both parties agree the ALJ failed to address Plaintiff's request to amend her alleged onset date. SSR 83-20 states:

> [i]n many claims, the onset date is critical; it may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits. In title II worker claims, the amount of the benefit may be affected; in title XVI claims, the amount of benefit payable for the first month of eligibility may be prorated. Consequently, it is essential that the onset date be correctly established and supported by the evidence, as explained in the policy statement.

SSR 83-20, 1983 WL 31249, at *1 (S.S.A. 1983).

At her March 31, 2015 hearing, Plaintiff requested to amend her alleged onset date to September 23, 2008. (T. 75-76.) On March 31, 2015, Plaintiff also provided a written request to amend her onset date. (T. 337.) Although the ALJ acknowledged Plaintiff's request at the hearing he did not provide any indication of whether he would or would not grant the request. (T. 75-78.) The ALJ's written decision did not discuss Plaintiff's request and found Plaintiff not disabled from her original onset date of April 20, 2012. (T. 26.) Because the onset date potentially governs the period for which Plaintiff can be paid benefits "it is essential that an onset date be established correctly and supported by the evidence." *Duval v. Colvin*, No. 6:13-CV-495 GLS/ESH, 2014 WL 4637092, at *6 (N.D.N.Y. Sept. 16, 2014). Therefore, remand is necessary to address Plaintiff's request to amend her alleged onset date.

**B. Medical Evidence in the Record and RFC Determination**

Both parties agree the ALJ failed to properly weigh the medical opinion evidence in the record and there were gaps in the record; therefore, his RFC determination was not supported by substantial evidence.

The RFC is an assessment of "the most [Plaintiff] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)[2]. The ALJ is responsible for assessing Plaintiff's RFC based on a review of relevant medical and non-medical evidence, including any statement about what Plaintiff can still do, provided by any

---

[2] Effective March 27, 2017, many of the Regulations cited herein have been amended, as have SSRs. Nonetheless, because Plaintiff's social security application was filed before the new Regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier Regulations and SSRs.

medical sources. *Id.* §§ 404.1527(d), 404.1545(a)(3), 404.1546(c), 416.927(d), 416.945(a)(3), 416.946(c).

In weighing the medical opinion evidence in the record, the opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. §§ 404.1527(c)(2)(i)-(iv), 416.927(c)(2)(i)-(iv). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Here the record contained multiple medical source statements by Plaintiff's treating source, Vladimir Andries, M.D.

On April 19, 2012, Dr. Andries completed a Medical Examination for Employability Assessment, Disability Screening, and Alcoholism/Drug Addition Determination form for New York State Office of Temporary and Disability. (T. 403-404.) Dr. Andries stated Plaintiff suffered from Crohn's disease, COPD, and chronic

8

intermittent sacroiliitis. (T. 403.) He checked the box indicating Plaintiff was "moderately limited" in her ability to: walk, stand, and sit. (T. 404.)[3] He checked the box indicating Plaintiff was "very limited" in her ability to: lift, carry, push, pull, and bend. (*Id.*) He checked the box indicating she had no limitation in her ability to: see, hear, speak, use her hands, or climb. (*Id.*) He noted her medications as Asacol and Hydrocodone. (*Id.*) Dr. Andries wrote he began treating Plaintiff in 2006. (*Id.*)

On December 19, 2012, Dr. Andries completed another form for New York State Office of Temporary and Disability. (T. 383-388.) When asked to provide Plaintiff's diagnoses, the doctor listed: Crohn's disease, chronic sacroiliitis, COPD, asthmatic bronchitis, malabsorption syndrome, and hypovitaminosis D. (T. 383.) Dr. Andries indicated he treated Plaintiff once a month for her chronic pain in her low back, chronic Crohn's with progressive weight loss, and chronic wheezing and shortness of breath. (T. 384.) When asked if fatigue was present, the doctor wrote Plaintiff suffered from chronic fatigue and she must rest fifteen minutes every hour. (T. 385.) When asked to provide representative weights over at least a three month period, Dr. Andries wrote Plaintiff's weighed 125 pounds in November of 2011 and 110 pounds on December 19, 2012. (*Id.*) Dr. Andries provided specific work-related physical activities limitations. Dr. Andries opined Plaintiff could occasionally (up to 1/3 of a workday) lift and carry five pounds. (*Id.*) He checked the boxes indicating Plaintiff had no limitations in her ability to stand and/or walk, or sit. (T. 386-387.) Dr. Andries stated Plaintiff was limited in her ability to push and/or pull. (T. 387.) Dr. Andries wrote Plaintiff had episodes of intermittent diarrhea and abdominal cramps. (*Id.*)

---

[3] The form contained the following three options for functional limitations: "no evidence of limitations", "moderately limited", and "very limited." (T. 404.)

On December 22, 2014, Dr. Andries completed a Medical Source Statement of Ability to Do Work Related Activities (Physical). (T. 619-622.) Therein, he opined Plaintiff could lift and carry up to twenty pounds occasionally (up to 1/3 of the workday) and never more than 21 pounds. (T. 619.) When asked how many hours Plaintiff could sit at one time without interruption during a workday, Dr. Andries circled "8"; when asked how many hours Plaintiff could stand he circled "3"; and when asked how many hours Plaintiff could walk he wrote 10 minutes. (T. 620.) When asked how many hours total in an eight hour workday Plaintiff could sit, Dr. Andries circled "8"; when asked how many hours Plaintiff could stand he circled "2"; and when asked how many hours Plaintiff could walk he wrote 10 minutes. (*Id.*) Dr. Andries indicated Plaintiff had manipulative limitations with her right hand, but did not complete the form regarding her left hand. (T. 621.) He opined Plaintiff could occasionally use foot controls. (*Id.*) He indicated Plaintiff could never: climb stairs and ramps; climb ladders or scaffolds; balance; kneel; crouch; or crawl. (T. 622.) He opined Plaintiff could occasionally stoop. (*Id.*)

The record before the ALJ also contained physical consultative examinations and medical source statements. Consultative examiner, Joseph Prezio, M.D., examined Plaintiff on December 5, 2012 and October 22, 2014, and provided medical source statements. (T. 378-381, 567-576, 577-587.)[4]

On December 5, 2012, Dr. Prezio opined:

[b]ased on the current physical examination and based on only the static physical, [Plaintiff] does not appear to have any significant physical limitations or restrictions at this time, with the exception of possibly some

---

[4] On October 22, 2014, it appears Dr. Prezio conducted an orthopedic examination (T. 567-570) and an internal medicine examination (T. 577-581). The results of the examinations are essentially identical. (Compare T. 567-570 to T. 577-581.)

10

> mild restriction for prolonged standing, walking, squatting, and kneeling as a result of the discomfort noted postraumatically in the area of the left ankle.

(T. 381.)

On October 22, 2014, Dr. Prezio opined Plaintiff had:

> [m]ild restrictions for engaging in any prolonged standing, walking, squatting, kneeling, bending, or doing any heavy lifting as a result of the findings noted in the left knee and to a lesser extent in the left ankle.

(T. 569, 580.)

On October 22, 2014, Dr. Prezio also completed identical Medical Source Statement of Ability to Do Work-Related Activities (Physical) forms. (T. 571-575, 584-587.) He indicated Plaintiff could occasionally lift and carry up to ten pounds. (T. 571, 582.) Dr. Prezio did not check any boxes indicating Plaintiff could, or could not, lift and carry more than ten pounds. (T. 571, 582.) Dr. Prezio wrote the lifting and carrying limitations were due to Plaintiff's left knee pain and nutritional status due to Crohn's disease. (T. 571, 582.) Dr. Prezio opined Plaintiff could sit for three hours at a time, stand for an hour at a time, and walk for thirty minutes. (T. 572, 583.) Dr. Prezio opined Plaintiff could sit for a total of eight hours, stand for a total of two hours, and walk for a total of an hour in an eight hour workday. (T. 572, 583.) Dr. Prezio again noted these limitations were due to Plaintiff's left knee and nutritional status due to Crohn's disease. (T. 572, 583.) Dr. Prezio opined, due to her Crohn's disease, Plaintiff could occasionally use her right hand and her left hand for reaching, handling, fingering, feeling, pushing and pulling. (T. 573, 584.) He indicated, due to her left knee pain, Plaintiff could occasionally to frequently use her feet. (T. 573, 584.) Dr. Prezio indicated Plaintiff could occasionally: climb stairs and ramps; balance; and stoop. (T.

11

574, 585.) He opined Plaintiff could never: climb ladders or scaffolds; kneel; crouch; or crawl. (T. 574, 585.)

The record contains medical source statements pertaining to Plaintiff's ability to perform the mental demands of work as well. On September 26, 2014, Lauren Stack, Ph.D. performed a consultative psychiatric evaluation, provided a medical source statement, and completed a Medical Source Statement of Ability to Do Work Related Activities (Mental) form. (T. 550-557.) Dr. Stack opined Plaintiff had no impairment in her ability to follow and understand simple directions and instructions, perform simple tasks independently, or maintain attention and concentration. (T. 553, 555.) She opined Plaintiff had mild limitations in her ability to maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, and appropriately deal with stress. (T. 553, 555-556.) Dr. Stack stated Plaintiff's mental limitations were due to fatigue, "some cognitive deficits secondary to malnourishment and exhaustion," and anxiety. (T. 553.)

Plaintiff's provider, Mary Cruser, M.D. provided a medical source statement dated March 25, 2015. (T. 605-607.) She opined Plaintiff had no limitations in her ability to understand, remember, and carry out instructions. (T. 605.) She opined Plaintiff had moderate limitations in her ability to interact appropriately with the public, supervisors, and co-workers. (T. 606.)[5] She opined Plaintiff had marked limitation in her ability to respond appropriately to usual work situations and to changes in a routine work setting. (*Id.*) Dr. Cruser wrote Plaintiff is unable to leave the house during a flare

---

[5] Moderate is defined as more than a slight limitation, but the individual is still able to function satisfactorily. (T. 605.) Marked is defined as a serious limitations and a substantial loss in the ability to effectively function. (*Id.*)

12

up of her Crohn's disease. (*Id.*) Dr. Cruser further wrote Plaintiff's Crohn's disease causes significant pain and fatigue. (*Id.*)

The ALJ's weighing of the medical opinion evidence in problematic. First, in his analysis of the opinion evidence in the record, the ALJ incorrectly concluded Dr. Andries's December 2012 statement and Dr. Prezio's 2014 statement indicated Plaintiff could perform light work. (T. 23-24.) To be sure, Dr. Andries's December 2012 statement, that Plaintiff had no limitations in her ability to stand, walk, and sit, is consistent with the demands of light work. However, Dr. Andries's December 2012 opinion that Plaintiff could only occasionally lift and carry up to five pounds is inconsistent with the demands of light work. (T. 23, 386); *see* 20 C.F.R. §§ 404.1567(b) and 416.967(b) (light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds). Also contrary to the ALJ assertion, Dr. Prezio's statement that Plaintiff could occasionally lift and carry up to ten pounds is inconsistent with the lifting and carrying demands of light work. (T. 23-24, 571, 582.) To be sure, Dr. Andries opined in his December 2014 statement Plaintiff could lift and carry up to 20 pounds occasionally which is consistent with light work. (T. 619.) However, light work requires the ability to frequently lift and carry up to 10 pounds. 20 C.F.R. §§ 404.1567(b) and 416.967(b). Neither Dr. Andries nor Dr. Prezio opined Plaintiff could lift and carry any weight frequently. (T. 619.) Therefore, the ALJ's assertion that Dr. Andries's and Dr. Prezio's opinions support light work is incorrect.

Second, in weighing the medical opinion evidence in the record, the ALJ failed to provide any evidence in the record to support his determinations and instead provided conclusory statements. The ALJ afforded "significant weight" to Dr. Andries's

December 2014 statement, but "little weight" to his findings regarding Plaintiff's ability to stand, walk, climb stairs and ramps, balance, kneel, and crouch "because he is unable to identify any objective medical evidence that supports such limitations." (T. 24.)[6] The ALJ afforded Dr. Andries's December 2012 statement "greater weight" reasoning the "findings are more consistent with the record as a whole." (*Id.*) The ALJ afforded "significant weight" to Dr. Stack's opinion reasoning "her clinical observations support her findings and because her findings are constant with the record as a whole." (*Id.*)

The ALJ afforded Dr. Cruser's opinion "significant weight" because of her treating relationship and "her findings are generally consistent with the record as a whole." (T. 24.) However, the ALJ stated in his step three determination he afforded "little weight" to Dr. Cruser's opinion that Plaintiff had marked limitations in her ability to respond to work situations and changes in the work setting "because that conclusion is not supported by the evidence of the record." (T. 17.)

Where an ALJ's reasoning and adherence to the Regulations is clear, he is not required to explicitly go through each and every factor of the Regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527(c), the Court held that "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear"). However, the ALJ's reasoning for affording weight is not clear from his decision. The ALJ's reasoning for affording weight to the opinions of the treating sources, and consultative sources, consists mainly

---

[6] However, Dr. Andries does state in his medical source statement that limitations were due to Plaintiff's "severe cachectic state secondary to Crohn's disease and dietary malabsorption." (T. 621.)

14

of conclusory statements that the opinions are, or are not, supported by the record. Therefore, remand is necessary for the ALJ to provide a more thorough analysis of the weight afforded to the opinions in the record and subsequent RFC determination because the ALJ's conclusory reasoning for assigning weight to the medical opinions in the record did not fulfill his obligation to "provide[ ] 'good reasons' for the weight given to" that opinion. *Morgan v. Colvin*, 592 F. App'x 49, 50 (2d Cir. 2015) (quoting *Halloran*, 362 F.3d at 32).

Further, as stated by Defendant, the ALJ's decision did not fully reconcile all aspects of other opinions throughout the record, related to the effects of Plaintiff's Crohn's disease. (Dkt. No. 24 at 7 [Def.'s Mem. of Law].) As outlined herein, the decision inaccurately characterized Dr. Prezio's opinion and Dr. Andries's opinion as supporting the RFC for a range of light work. In addition, as acknowledged by Defendant, the RFC finding that Plaintiff requires "access to a restroom" is problematic and should be addressed on remand. (Dkt. No. 24 at 10 [Def.'s Mem. of Law].)

On remand the ALJ should further develop the record. Although an ALJ has a heightened duty to develop the record for a *pro se* plaintiff, if the administrative record is "sufficient" for the ALJ to make a finding remand for further development is not necessary. *Morris v. Berryhill*, 721 F. App'x 25, 28 (2d Cir. 2018). Because remand is necessary for a proper analysis of the medical opinion evidence and RFC determination, it would be prudent on to further develop the record by requesting treatment notations from Dr. Cruser, Doug Ikelheimer, M.D., and any other medical provider the ALJ may deem necessary.

Plaintiff first submitted evidence from Dr. Ikelheimer to the AC.  (T. 1-6.)  The AC determined this evidence was from a later time and did not include it in the record.  (T. 5, 37.)  Plaintiff then submitted Dr. Ikelheimer's statement to this Court stating she was not aware of the "importance of all medical records" and "the cost of the records made it harder to attain."  (Dkt. No. 21 at 47 [Pl.'s Mem. of Law].)  Evidence submitted from Dr. Ikelheimer consists of a one page letter dated August 25, 2015 and a medical source statement.  (T. 37.)  The letter references treatment provided from November 2013 through February 2014; however, there are no treatment notations provided.  (*Id.*)  Defendant concedes that although Dr. Ikelheimer's letter was dated after the ALJ's decision, the doctor stated he treated Plaintiff during the relevant time period.  (Dkt. No. 24 at 10 [Def.'s Mem. of Law].)[7]  On remand, the ALJ will consider all appropriate evidence, including Dr. Ikelheimer's letter and request treatment notations from Dr. Ikelheimer.

Plaintiff makes additional arguments that can be addressed on remand.  Plaintiff argues the ALJ erred at step two in failing to find she had a severe mental health impairment.  (Dkt. No. 21 at 43 [Pl.'s Mem. of Law].)  Because remand is necessary for a proper analysis of opinions treating mental health providers and to request treatment notations form mental health providers, the ALJ should reassess any mental impairments at step two and three on remand.  Plaintiff argues the ALJ erred in his credibility determination.  (Dkt. No. 21 at 35-43 [Pl.'s Mem. of Law].)  Due to errors in

---

[7] Although Dr. Ikelheimer's letter references treatment during the relevant time period, treatment was provided significantly after Plaintiff's onset date (both as alleged by Plaintiff and determined by the ALJ) and a year after Plaintiff's date last insured.  (T. 37.)  Other records submitted to this Court by Plaintiff, such as treatment notes from Julia Hausman, were dated well after Plaintiff's alleged onset date and date last insured.  (T. 41-44.)  These issues can be addressed on remand.

16

weighing medical opinion evidence, the ALJ should reassess Plaintiff's credibility on remand.

Overall, the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly assess the medical opinion evidence in the record.

**C. Remand for Calculation of Benefits**

The court has the power to affirm, modify, or reverse the decision of the Commissioner upon the pleadings and transcript of the record, "with or without remanding the cause for a rehearing". 42 U.S.C. § 405(g); *Butts v. Barnhart,* 388 F.3d 377, 385 (2d Cir. 2004). Reversal for payment of benefits is appropriate "[w]here the existing record contains persuasive proof of disability and a remand for further proceedings would serve no further purpose". *Martinez v. Barnhart,* 262 F.Supp.2d 40, 49 (W.D.N.Y. 2003) (quoting *Parker v. Harris,* 626 F.2d 225, 235 [2d Cir. 1980]). The Second Circuit held that, "where application of the correct legal principles ... could lead to only one conclusion, there is no need to require agency reconsideration." *Matovic v. Chater,* 1996 WL 11791, at *6 (S.D.N.Y.1996) (quoting *Johnson v. Bowen,* 817 F.2d 983, 986 [2d Cir.1987]). Here, the record does not contain "persuasive proof" that could only lead to the conclusion that Plaintiff is disabled; therefore, remand for calculation of benefits is not appropriate in this case.

In her reply brief Plaintiff requests remand for calculation of benefits because she meets various Listings. (Dkt. No. 29.) At step three of the sequential process the ALJ must determine whether a plaintiff's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1526, 416.920(d), 416.926) ("the Listings").

If a plaintiff's impairments or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement, plaintiff is disabled. *Id.* §§ 404.1509, 416.909. If a plaintiff does not meet or equal a Listing, the analysis proceeds to the next step.

In making her argument that she meets a Listing, and is therefore disabled, Plaintiff relies in part on evidence that was not before the ALJ at the time of his decision. Namely, Plaintiff relies on a notation from Dr. Andries dated June 12, 2015. (Dkt. No. 29.) Dr. Andries's letter was first submitted to the AC. (T. 5.) Therefore, remand for new proceedings is necessary because the record does not compel a finding of disability and the record now contains evidence that was not before the ALJ at the time of his decision.

Overall, remand is necessary for new proceedings to determine Plaintiff's onset date; to weigh the medical opinion evidence in the record, including opinion evidence first submitted to the AC; to obtain additional treatment records, should they exist; and to determine Plaintiff's RFC. The ALJ will also need to make new findings related to what other work Plaintiff retains the ability to perform in the national economy, and should consult with a vocational expert for testimony if warranted by the findings on remand.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 21, 29) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 24) is **GRANTED**; and it is further

**ORDERED** that this matter is **REMANDED** to Defendant, pursuant to 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

Dated: July 12, 2018

_____
William B. Mitchell Carter
U.S. Magistrate Judge